IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:13-CV-00204-RJ
(consolidated with No. 4:13-CV-222-RJ)

| | |
|---|---|
| SHIRLEY LYONS, ) | |
| ) | |
| Plaintiff/Claimant, ) | |
| ) | |
| ) | |
| v. ) | O R D E R |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings [DE-32, -35] pursuant to Fed. R. Civ. P. 12(c). Claimant Shirley Lyons ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of her applications for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") payments. The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. The parties have consented to the jurisdiction of a magistrate judge [DE-27], and the cross motions are considered here pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, Claimant's Motion for Judgment on the Pleadings will be denied and Defendant's Motion for Judgment on the Pleadings will be allowed, upholding the final decision of the Commissioner.

**I. STATEMENT OF THE CASE**

Claimant protectively filed applications for a period of disability, DIB, and SSI on August

9, 2010, alleging disability beginning July 28, 2010. (R. 297-306, 331). Her claims were denied initially on November 1, 2010, and upon reconsideration on February 2, 2011. (R. 93-131). A hearing before Administrative Law Judge ("ALJ") William Andersen was held on November 21, 2011, at which Claimant, who was represented by counsel, and a vocational expert ("VE") appeared and testified. (R. 38-68). On December 23, 2011, the ALJ issued a decision denying Claimant's request for benefits. (R. 133-48). On October 4, 2012, the Appeals Council remanded the case to the ALJ. (R. 149-51). On March 21, 2013, ALJ Catherine Harper held a hearing at which Claimant, represented by counsel, and a VE appeared and testified. (R. 69-92). On June 7, 2013, the ALJ issued a decision denying Claimant's request for benefits. (R. 19-37). Claimant then requested a review of the ALJ's decision by the Appeals Council, which was denied on August 2, 2013. (R. 7-11). On August 27, 2013, the appeals counsel set aside its denial to consider additional information, but again denied Claimant's request for review. (R. 1-5). Claimant then filed a complaint in this court seeking review of the now final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount

2

of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

### III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520 and 416.920:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id*. At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id*.

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c) and 416.920a(b)-(c). This

3

regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(3), 416.920a(e)(3).

In this case, Claimant alleges the ALJ erred in finding Claimant has the Residual Functional Capacity ("RFC") to perform work at the medium exertion level, specifically by (1) failing to give the opinion of Claimant's treating physician, Dr. Cannon, sufficient weight; (2) failing to classify Claimant's mental impairments as severe; and (3) failing to find Claimant disabled under Rule 201.09 of the medical-vocational guidelines. Pl.'s Mem. [DE-32] at 15-19.

### IV. FACTUAL HISTORY

#### A. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant has not engaged in substantial gainful employment since the alleged onset date. (R. 24). Next, the ALJ determined Claimant has the severe impairment of degenerative disc disease of the lumbar spine and non-severe impairments of "mild" degenerative changes of the left shoulder, obesity, gastroesophageal reflux disease ("GERD"), hypertension, gout, and excision of lipoma from the left flank in September 2012. (R. 24-25). However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 26). Applying the special technique prescribed by the

regulations, the ALJ found that Claimant's mental impairments of alcohol abuse, anxiety, and depression do not cause more than a minimal limitation in her ability to perform basic work activities, finding specifically that Claimant has no restriction in her activities of daily living, mild restrictions in social functioning and maintaining concentration, persistence or pace, and no episodes of decompensation of extended duration. (R. 25-26).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform medium work[1] with the following limitations:

> She can occasionally climb ladders/ropes/scaffolds, ramps and stairs, and stoop (due to obesity and back pain). She can frequently balance, crouch, kneel and crawl. She can occasionally reach overhead with her non-dominant left arm (due to non-severe left shoulder pain). She should also avoid concentrated exposure to unprotected heights.

(R. 27). In making this assessment, the ALJ found Claimant's statements about her limitations not fully credible. (R. 28). At step four, the ALJ concluded Claimant is capable of performing her past relevant work as a machine inserting operator. (R. 30). Despite this finding the ALJ alternatively determined at step five, upon considering Claimant's age, education, work experience and RFC, that Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 30-31).

## B.     Claimant's Testimony at the Administrative Hearing

At the time of Claimant's March 21, 2013 administrative hearing, Claimant was 53 years old and living with her husband and two of her adult children. (R. 73). Claimant completed the eleventh grade and has not obtained a GED. (R. 74). Claimant's husband works on a farm and they have no

---

[1] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying objects weighing up to 25 pounds. If someone can do medium work, she can also do sedentary and light work. 20 C.F.R. §§ 404.1567(c), 416.967(c).

5

other source of income. (R. 75). Claimant worked as an inserting machine operator at a paper company until the company went out of business and last worked in 2010 as a packer at a peanut factory until back problems forced her to stop working. (R. 75-76).

Claimant explained numerous medical conditions supporting her disability claim and inability to work. Claimant is 5 feet 4 inches tall and weighed 249 pounds at the time of the hearing. (R. 73). Claimant has arthritis in her left shoulder and back, also affecting her left hip. (R. 77). As a result, she cannot raise her left hand above shoulder level or bend over, can stand for no more than 15 minutes and sit for no more than 20 minutes before having to change positions, can lift five to ten pounds, and can walk less than a block. (R. 77-79). Claimant rated her shoulder pain during the hearing at a ten. (R. 78). Claimant utilizes a cane to ambulate because she loses her balance and puts more weight on her right leg. (R. 79). The cane is not prescribed and was purchased for Claimant by a family member. (R. 83-84). Claimant indicated the doctors at the family practice she utilizes are doing a good job helping her and treating her back pain. (R. 85).

Claimant has also been treated for post-traumatic stress, anxiety, and depression, for which she takes medication and receives monthly counseling. (R. 80). After Claimant's mother died she began having flashbacks, experienced an anxiety attack, and was admitted to a psychiatric ward. *Id.* Claimant was also hospitalized for two days after separating from her husband, but they have since reconciled. (R. 84). Claimant indicated her mental health medications are working well, specifically that she feels better since she started taking the medicine and experiences no side effects. (R. 81). Claimant's husband pays for her medications, and she has utilized a payment plan for some other treatments. (R. 83).

On an average day, Claimant watches television. (R. 81). She can no longer do activities

6

such as laundry, grocery shopping, cooking, and vacuuming, and her daughter performs these tasks. (R. 77-78). Claimant's adult children do not want her to stay home by herself because she falls due to her right leg giving out, which is a new problem in addition to her history of left leg problems that started after she stopped working. (R. 81-82). Claimant's daughter helps her bathe and dress, because she can "hardly move [her] arm" to use a wash cloth, and Claimant cannot lift heavy items such as a cast iron skillet or large pot with her left hand. (R. 82). Claimant had not consumed alcohol in the two years prior to the hearing. (R. 83).

## C. Vocational Expert's Testimony at the Administrative Hearing

Melissa Stewart testified as a VE at the administrative hearing. (R. 85-91). The VE classified Claimant's past work as follows: inserting machine operator (DOT # 208.685-018) as light work with a skill level of 2; and hand packager (DOT # 920.587-018) as medium work with a skill level of 2. (R. 86). The ALJ then asked the VE to assume a hypothetical individual of the same age, education and prior work experience as Claimant, who is able to perform medium exertional work with the limitations of occasionally climb ladders, ropes, scaffolds, ramps and stairs, occasionally stoop and reach overhead with the left arm, frequently balance, crouch, kneel, and crawl, and avoid concentrated exposure to unprotected heights. (R. 87). The ALJ inquired as to whether such a person could perform Claimant's past relevant work, and the VE responded that such a person could perform the job of inserting machine operator. (R. 87-88). The VE also opined that such a person could perform the jobs of dining room attendant (DOT # 311.687-018); food service hospital worker (DOT # 319.677-014); and patient transporter (DOT # 355.677-014). (R. 88-89). The ALJ then changed the hypothetical to an individual capable of performing light work with the same limitations as the first hypothetical and asked whether the individual could perform the past

7

relevant work of inserting machine operator, to which to VE responded in the affirmative. (R. 89). The VE also indicated such an individual could perform the jobs of furniture rental consultant (DOT # 295.357-018); cashier II (DOT # 211.462-010); and children's attendant (DOT # 349.677-018). (R. 89). The VE also testified that workers in unskilled jobs typically are allowed a 15 minute morning and afternoon break with a mid-day 30 minute lunch break and that if those breaks were exceeded it would be a problem. (R. 90).

In response to questioning by Claimant's attorney, the VE testified that if the hypothetical individual was limited in using her left arm as merely an assistive device it would preclude performance of Claimant's past relevant work. (R. 90). The VE also testified that if the hypothetical individual was limited to sedentary work, in addition to using the left arm in an assistive capacity, the only identifiable job such an individual could perform would be surveillance system monitor (DOT # 379.367-010). (R. 90-91).

## V. DISCUSSION

Claimant contends that the ALJ erred in finding Claimant has the Residual Functional Capacity ("RFC") to perform medium work, specifically by (1) failing to give the opinion of Claimant's treating physician, Dr. Cannon, sufficient weight; (2) failing to classify Claimant's mental impairments as severe; and (3) failing to find Claimant disabled under Rule 201.09 of the medical-vocational guidelines. Pl.'s Mem. [DE-32] at 15-19.

### A. The ALJ's Evaluation of Dr. Cannon's Opinion

Claimant contends that the June 7, 2012 medical opinion of Dr. Cannon, one of Claimant's treating physicians, should have been given great weight because it is supported by the record and there is no contradictory evidence from Claimant's other treating or examining doctors. Pl.'s Mem.

8

at 16-17. The Commissioner contends that the ALJ's decision to give Dr. Cannon's opinion less than controlling weight is supported by substantial evidence. Def.'s Mem. [DE-36] at 12-16. The undersigned agrees with the Commissioner that the ALJ's evaluation of Dr. Cannon's opinion was in accordance with the law and supported by substantial evidence.

Regardless of the source, the ALJ must evaluate every medical opinion received. 20 C.F.R. §§ 404.1527(c), 416.927(c). In general, the ALJ should give more weight to the opinion of an examining medical source than to the opinion of a non-examining source. *Id.* §§ 404.1527(c)(1), 416.927(c)(1). Additionally, more weight is generally given to opinions of treating sources, who usually are better able to provide "a detailed, longitudinal picture" of a claimant's alleged disability, than non-treating sources, such as consultative examiners. *Id.* §§ 404.1527(c)(2), 416.927(c)(2). Though the opinion of a treating physician is generally entitled to "great weight," the ALJ is not required to give it "controlling weight." *Craig*, 76 F.3d at 590 (quotations & citations omitted). In fact, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Id.*; *see also Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (stating "[t]he ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence"); *Mastro*, 270 F.3d at 178 (explaining "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence") (citation omitted).

If the ALJ determines that a treating physician's opinion should not be considered controlling, the ALJ must then analyze and weigh all of the medical opinions in the record, taking into account the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the

9

physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist. *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). While an ALJ is under no obligation to accept any medical opinion, *see Wireman v. Barnhart*, No. 2:05-CV-46, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006), he must nevertheless explain the weight accorded such opinions. *See* SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996); SSR 96-6p, 1996 WL 374180, at *1 (July 2, 1996). An ALJ may not reject medical evidence for the wrong reason or no reason. *Wireman*, 2006 WL 2565245, at *8. "In most cases, the ALJ's failure to consider a physician's opinion (particularly a treating physician) or to discuss the weight given to that opinion will require remand." *Love-Moore v. Colvin*, No. 7:12-CV-104-D, 2013 WL 5350870, at *2 (E.D.N.C. Sept. 24, 2013) (citing *Hill v. Astrue*, 698 F.3d 1153, 1159-60 (9th Cir. 2012); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 747, 750 (6th Cir. 2007); *Hines v. Barnhart*, 453 F.3d 559, 563 (4th Cir. 2006)). However, "[i]n some cases, the failure of an ALJ to explicitly state the weight given to a medical opinion constitutes harmless error, so long as the weight given to the opinion is discernible from the decision and any grounds for discounting it are reasonably articulated." *Bryant v. Colvin*, No. 5:11-CV-648-D, 2013 WL 3455736, at *5 (E.D.N.C. July 9, 2013) (citations and quotations omitted).

Dr. Cannon, a doctor with ECU Physicians, saw Claimant on April 3, 2012, for medication refills. (R. 683). Dr. Cannon's treatment notes from that visit indicate that while Claimant had a history of hypertension, GERD, sarcoid, hysterectomy, HLD, and chronic back pain and had recently visited the emergency department for anxiety and was placed on Valium, she had not visited ECU Physicians since December 2010 (noting she apparently had a few visits to another clinic) and she was without complaints other than her need for medication refills. (R. 684). On a review of

10

symptoms, Claimant complained of indigestion and back pain, and a physical exam was essentially normal. (R. 684-85). Dr. Cannon concluded that Claimant's blood pressure was elevated, noting she had not taken her medicine, Claimant's GERD medication was too expensive and prescribed an alternative, and Claimant's anxiety was stable since starting medication. (R. 686-87). Dr. Cannon also continued Claimant's medication for muscle spasms. (R. 687).

Claimant next saw Dr. Cannon on June 7, 2012, for a follow-up visit at which Claimant complained of pain in her lower back, left shoulder, left hip, and knee, rating her pain an eight on a scale of one to ten. (R. 699-700). Dr. Cannon noted Claimant was using a cane for ambulation, on some days could barely get out of bed, and was trying to obtain disability due to her back pain. (R. 700). Dr. Cannon's examination indicated that Claimant was in discomfort from her back pain; had significant crepitus bilaterally in her knee, no effusion, was tender over medical aspect of patella, a slowed but normal range of motion, and no joint laxity; had tenderness over paraspinal muscles, decreased range of motion of the lumbar spine secondary to pain, and moderate tenderness over bilaterally SI joint; and had a painfully looking gait and could barely get out of the chair without assistance. (R. 702). Dr. Cannon concluded Claimant's continued back and knee pain was likely from osteoarthritis and prescribed a trial of Mobic, recommended SI joint injections (which Claimant indicated she could not afford), and recommended physical therapy, which Claimant stated she did not want. (R. 703). That same day, Dr. Cannon wrote the opinion at issue here, which states as follows:

> The above said patient has been seen in out [sic] clinic several times over past few months. She has asked us to write a letter in her support for disability. Patient with likely moderate to severe arthritis on physical exam in several locations. Due to lack of any insurance coverage we can not do any further workup as advanced imaging is necessary.

11

> With respect to work status. Her medical conditions makes it quite difficult to ambulate or spend significant amount of time on feet. Also now using cane for ambulation. Suspect this patient would struggle with most types of work secondary to significant pain. Also due to pain we have her on medicine that potentially could cause some drowsiness.
>
> I think this patient should strongly be considered for disability coverage due to her moderate to severe arthritis. . . .

(R. 691).

The ALJ gave great weight to the opinions of the non-examining State Agency physicians, and less weight to Dr. Cannon's June 7, 2012 opinion, stating as follows:

> I give less weight to Dr. Brian Cannon's opinion dated June 7, 2012, which stated that she is "disabled" due to moderate to severe arthritis because it is not consistent with the medical evidence of record or his own treatment notes (Exhibit B15F). For example, at the visit on April 3, 2012, prior to writing the letter, he made no objective findings that would support complaints of back pain. He also observed that the claimant had no edema, normal pulses in all extremities, normal mood, and normal attention/concentration. While the claimant's hypertension was elevated at that visit, it was because she had not taken her medication that day. I find that his treatment notes do not support his opinion (Exhibit B14F). Furthermore, the opinion on disability is reserved for the Commissioner.

(R. 29). The ALJ fully considered Dr. Cannon's opinion and her reasons for discounting it are supported by substantial evidence.

First, the ALJ's finding that Dr. Cannon's opinion is not consistent with his treatment notes is supported by the record. As discussed above, Dr. Cannon's April 3, 2012 examination of Claimant was relatively normal and there is little to no evidence in the way of objective findings to support the significant degeneration of Claimant's condition she reported just two months later at the time Dr. Cannon opined as to Claimant's disability. (R. 683-88, 679-704). Likewise, the ALJ's finding that Dr. Cannon's opinion is contradicted by other medical evidence is supported by the record. Dr. Cannon indicated in his opinion that Claimant had "*likely* moderate to severe arthritis

12

on physical exam in several locations," but that "due to lack of any insurance coverage we can not do any further workup as advanced imaging is necessary." (R. 691) (emphasis added). However, as the ALJ noted, a subsequent MRI revealed only "mild to moderate degenerative changes" in the lower lumbar spine. (R. 28, 878). The ALJ also noted that a July 1, 2011 lumbar spine x-ray was normal (R. 624), a November 14, 2011 musculoskeletal examination was negative for back pain and stiffness (R. 657), an updated lumbar spine x-ray performed on April 1, 2012 showed mild lumbar spondylosis unchanged from prior study (R. 672), and Claimant had a history of conservative management (R. 667, 774). (R. 28). With respect to Claimant's shoulder, the ALJ cited treatment records indicating that Claimant's complaints and treatment of shoulder pain were sporadic (R. 606-08, 612, 622-23), x-rays were normal or showed mild degenerative changes with no acute abnormality (R. 490, 769), treatment was conservative (R. 786, 789-92), and Claimant declined admittedly helpful injections because she does not like needles (R. 784). (R. 28-29). The ALJ also cited the observation of a physical therapist that Claimant was moaning with all movements and complaining of 9 out of 10 pain, but when Claimant's cell phone rang she was able to able to move and get the phone out of her pocket and answer it without any physical signs of pain, that she was able to walk 100 feet twice with no physical signs of pain, and that Claimant stated she was not able to do home exercises due to pain, but she was able to do them in the gym during the session. (R. 29, 616).

The ALJ gave "specific and legitimate reasons" for assigning less weight to Dr. Cannon's opinion" and, therefore, was "was permitted to reject the treating physician's opinion in its entirety." *Bishop v. Comm'r of Soc. Sec.*, No. 14-1042, 2014 WL 4347190, at *2 (4th Cir. Sept. 3, 2014) (citations omitted). Moreover, while a review of the record indicates there is conflicting evidence

13

as to the extent of Claimant's pain, as the ALJ's summary of the medical evidence demonstrates (R. 27-29), it is the province of the ALJ to resolve inconsistencies in the record leaving the court to determine if the ALJ's determination is supported by substantial evidence. *Hayes v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir.1990) (citations omitted). Accordingly, the court finds that the ALJ properly weighed Dr. Cannon's opinion and adequately explained her decision to assign the opinion less weight.

## B.    The ALJ's Evaluation of Claimant's Mental Impairments

Claimant next contends that the record does not support the ALJ's finding that Claimant suffers from no severe mental impairments, specifically asserting that Claimant suffers from major depression that is severe and recurrent. Pl.'s Mem. at 17-20. The Commissioner contends that the ALJ correctly determined that Claimant's mental impairments do not more than minimally limit her ability to perform basic work activities. Def.'s Mem. at 16-17. The court agrees with the Commissioner that the ALJ did not err in this regard.

The ALJ found that Claimant's "medically determinable mental impairments of alcohol abuse, anxiety, and depression do not cause more than minimal limitation in her ability to perform basic work activities." (R. 25). The ALJ's determination with respect to Claimant's alcohol abuse is not in dispute. In explanation of the severity determination regarding Claimant's anxiety and depression, the ALJ stated as follows:

> She recently reported some audio/visual hallucinations, but the timing of it is suspect. The claimant alleged she started having audio/visual hallucinations of her dead mother in January 2012 which is immediately after the prior unfavorable decision was issued by ALJ Anderson on December 31, 2011 (Exh. B24F). Moreover, on follow-up, mental status exams showed her to be oriented, with intact recent/remote memory and goal directed thoughts (Exh. B19F). Recently in January 2013 the claimant reports she was started on Haldol and said it helped her hallucinations. She

14

> confirmed the medication was helpful on follow up in February 2013 and confirmed
> no adverse side effects. In testimony, she also confirmed feeling better since starting
> mental health medication and asserted they cause no side effects.

(R. 26). The ALJ also applied the special technique and found Claimant has no restrictions in her activities of daily living, mild restrictions in social functioning and maintaining concentration, persistence or pace, and no episodes of decompensation of extended duration. (R. 26). Thus, the ALJ concluded that "[b]ecause the claimant's medically determinable mental impairment causes no more than "mild" limitation in any of the first three functional areas and "no" episodes of decompensation which have been of extended duration in the fourth area, it is nonsevere (20 CFR 404.1520a(d)(1) and 416.920a(d)(1))." *Id.*

As an initial matter, to the extent the ALJ erred in finding Claimant's mental impairments to be nonsevere, such error is "legally irrelevant" as the ALJ specifically found Claimant satisfied the severity requirement at step two of the sequential evaluation process. (R. 24); *see Taylor v. Astrue*, No. 7:11-CV-162-FL, 2012 WL 3637254, at *4 (E.D.N.C. Aug. 1, 2012) (citing *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008) (explaining where other impairments were deemed severe "[t]he fact that some of [claimant's] impairments were not deemed to be severe at step two is therefore legally irrelevant")). To the extent Claimant contends the alleged error resulted in an incorrect RFC determination, the evidence does not support such a finding.

In support of the contention that her depression and anxiety constituted severe impairments, Claimant cites evidence in the record that she began suffering from mental problems after her mother died in early 2012 (R. 81); that she was admitted for care in October 2012, after experiencing auditory hallucinations and passive suicidal gestures, prescribed medications, and discharged with a GAF score of 20-30 (R. 743-50); that she was admitted again the same month for chronic PTSD

15

with a GAF score of 35 (R. 854); that she returned for treatment in November 2012, and was diagnosed with major depressive disorder, recurrent, severe with psychosis, and panic disorder and assigned a GAF score of 35-40, and was continued on medications and received counseling in December 2012 and in January and February 2013 (R. 837-43). Pl.'s Mem. at 17-18. However, there is substantial evidence in the record, in the form of Claimant's own testimony which was cited by the ALJ, indicating that these conditions were well controlled by medications (R. 25-26, 80-81), and multiple treatment records from 2012 and 2013 indicate Claimant's mental state was routinely normal or only minimally impaired (R. 675, 686, 701-02, 709, 716, 774, 781, 785, 840-42). Moreover, while there is no dispute that Claimant has been diagnosed with anxiety and depression, the diagnosis of a condition is not enough to prove disability; "[t]here must be a showing of related functional loss." *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir.1986). Here, Claimant has failed to carry her burden of showing how her depression and anxiety negatively impacted her ability to work. Accordingly, the ALJ's determination that Claimant's mental impairments were nonsevere is supported by substantial evidence or, alternatively, was harmless error.

## C. The ALJ's RFC Determination

Claimant finally contends that the ALJ erred in finding Claimant can perform work at the medium exertion level and that Claimant should have been limited to sedentary work, which would have resulted in a finding of disabled under Rule 201.09 of the medical-vocational guidelines. Pl.'s Mem. at 15-16, 19. The Commissioner contends that the RFC is supported by substantial evidence in the record. Def.'s Mem. at 5-12. The court finds no error in the ALJ's RFC determination.

An individual's RFC is the capacity which the individual possesses despite the limitations caused by her physical or mental impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also*

16

SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *see also* SSR 96-8p, 1996 WL 374184, at *5. Where a claimant has numerous impairments, including non-severe impairments, the ALJ must consider their cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments.") (citations omitted). The ALJ has sufficiently considered the combined effects of a claimant's impairments when each is separately discussed by the ALJ and the ALJ also discusses Claimant's complaints and activities. *Baldwin v. Barnhart*, 444 F. Supp. 2d 457, 465 (E.D.N.C. 2005) (citations omitted). The RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." SSR 96-8p, 1996 WL 374184, at *7.

Furthermore, when determining RFC, it is within the province of the ALJ to determine a claimant's credibility. *See Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) ("Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight."). Federal regulations 20 C.F.R. §§ 404.1529(a) and 416.929 provide the authoritative standard for the evaluation of subjective complaints of pain and symptomology, whereby "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Craig*, 76 F.3d at 593-94. First, the ALJ must objectively determine whether the claimant has medically documented impairments that

17

could cause his or her alleged symptoms. SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996); *Hines v. Barnhart*, 453 F.3d 559, 564 (4th Cir. 2006). If the ALJ makes this first determination, he must then evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work," *Craig*, 76 F.3d at 595, and whether the claimant's statements are supported by the objective medical record. SSR 96-7p, 1996 WL 374186, at *2; *Hines*, 453 F.3d at 564-65. Objective medical evidence may not capture the full extent of a claimant's symptoms, so where the objective medical evidence and subjective complaints are at odds, the ALJ should consider all factors "concerning the individual's functional limitations and restrictions due to pain and other symptoms." SSR 96-7p, 1996 WL 374186, at *3 (showing the complete list of factors). The ALJ may not discredit a claimant solely because his or her subjective complaints are not supported by objective medical evidence. *See Craig*, 76 F.3d at 595-96. But neither is the ALJ required to accept the claimant's statements at face value; rather, the ALJ "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." SSR 96-7p, 1996 WL 374186, at *3; *see also Taylor v. Astrue*, No. 5:10-CV-263-FL, 2011 WL 1599679, at *4-8 (E.D.N.C. Mar. 23, 2011) (memorandum and recommendation finding the ALJ properly considered the entire case record to determine that Claimant's subjective complaints of pain were not entirely credible), *adopted by* 2011 WL 1599667 (E.D.N.C. Apr. 26, 2011).

The ALJ discussed Claimant's hearing testimony and determined Claimant's statements regarding the severity and limiting effects of her symptoms were not entirely credible. (R. 27-28). In support of that finding, the ALJ provided a comprehensive discussion of the medical evidence and explained why it did not support the limitations alleged by Claimant. (R. 28-29) (citing (R. 878) (February 20, 2013 MRI revealed only "mild to moderate degenerative changes" in the lower lumbar

spine); (R. 624) (July 1, 2011 lumbar spine x-ray was normal); (R. 657) (November 14, 2011 musculoskeletal examination was negative for back pain and stiffness); (R. 672) (April 1, 2012 updated lumbar spine x-ray showed mild lumbar spondylosis unchanged from prior study); (R. 667, 774) (demonstrating history of conservative management for back pain); (R. 606-08, 612, 622-23) (demonstrating complaints and treatment of shoulder pain were sporadic); (R. 490, 769) (shoulder x-rays were normal or showed mild degenerative changes with no acute abnormality); (R. 786, 789-92) (treatment for shoulder pain was conservative); (R. 784) (Claimant declined admittedly helpful injections because she does not like needles); (R. 616) (physical therapist observed contradictory behavior by Claimant regarding pain symptoms, such as moaning with all movements and complaining of 9 out of 10 pain, but when Claimant's cell phone rang she was able to able to move and get the phone out of her pocket and answer it without any physical signs of pain)). The ALJ also explained the reasons for the weight attributed to the opinion of Dr. Cannon, discussed above, as well as the State agency physicians' opinions finding that Claimant was capable of medium work. (R. 29, 111-20, 122-31). Where the opinions of the state agency medical consultants are consistent with the other evidence of record, as is the case here, the ALJ is entitled to rely upon the opinions in determining the Claimant's RFC. *Smith v. Schweiker*, 795 F.2d 343, 356 (4th Cir. 1986).

Claimant also specifically asserts that she cannot engage in prolonged standing and walking required for medium or even light work. Pl.'s Mem. at 19. The ALJ noted Claimant's testimony that she utilizes a cane, but also that it was purchased by a family member and Claimant testified that it was not prescribed by her doctor. (R. 25, 27, 46). Records also show that while Claimant utilized her cane at times (R. 624) and her gait was reported to be "painful looking . . . as she can barely get out of chair without assistance" (R. 702), at other times Claimant was not utilizing a cane and her

gait was normal (R. 622, 840-41).

The ALJ indicated she considered the entire record, including Claimant's symptoms, activities of daily living, the combined effect of Claimant's severe and nonsevere conditions, the objective medical evidence and other evidence, as well as opinion evidence in formulating the RFC, and substantial evidence supports her finding that Claimant is capable of work at the medium exertion level. (R. 27-30); *see Reid v. Comm'r of Soc. Sec.*, — F.3d —, 2014 WL 4555249, at *4 (4th Cir. July 2, 2014) ("The Commissioner, through the ALJ and Appeals Council, stated that the whole record was considered, and, absent evidence to the contrary, we take her at her word.") (citation omitted). It is not within the province of the court to reweigh the evidence, even if the court might reach a different result, where the ALJ has considered and analyzed all the relevant evidence and her decision is supported by substantial evidence, as is the case here. *Mastro*, 270 F.3d at 176 (citing *Craig*, 76 F.3d at 589). Accordingly, the ALJ did not err in her RFC determination, and Claimant was not entitled to a finding of disability pursuant to the medical-vocational guidelines.

## VI. CONCLUSION

For the reasons stated above, Claimant's Motion for Judgment on the Pleadings [DE-32] is DENIED, Defendant's Motion for Judgment on the Pleadings [DE-35] is ALLOWED and the final decision of the Commissioner is UPHELD.

SO ORDERED, this the 24th day of September 2014.

Robert B. Jones, Jr.
United States Magistrate Judge